IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DENNIS F. SU'ESU'E,                              Civil No. 10-606-AC

       Petitioner,                    FINDINGS AND RECOMMENDATION

   v.

JEFFREY THOMAS,

       Respondent.


    DENNIS F. SU'ESU'E
    15381-006
    FCI-Sheridan
    P.O. Box 5000
    Sheridan, OR  97378

       Pro Se Petitioner


    DWIGHT C. HOLTON
    United States Attorney
    ROBERT D. NESLER
    Assistant United States Attorney
    1000 SW Third Avenue, Suite 600
    Portland, OR  97204-2902

       Attorneys for Respondent


   1 - FINDINGS AND RECOMMENDATION -

ACOSTA, Magistrate Judge.

Petitioner, an inmate at Federal Correctional Institution, Sheridan, Oregon ("FCI Sheridan") at the time of filing, brings this habeas corpus action pursuant to 28 U.S.C. § 2241. He alleges the Bureau of Prisons ("BOP") has wrongfully delayed interviewing him for participation in the Residential Drug Abuse Treatment Program ("RDAP"), and has wrongfully set a schedule for payment of restitution obligations while he is incarcerated. (#1, at 7.) Petitioner asks the Court to order the BOP to interview him for RDAP immediately and cease all collection activity. (*Id.*) Because Petitioner failed to exhaust administrative remedies and his claims lack merit, the Petition for Writ of Habeas Corpus (#1) should be denied and this action dismissed with prejudice.[1]

## BACKGROUND

---

[1]The Court notes Petitioner included a request for appointment of counsel in the body of his petition.   Unless an evidentiary hearing is required, the decision to appoint counsel in a habeas corpus proceeding is within the discretion of the district court. *Terrovona v. Kincheloe*, 852 F.2d 424, 429 (9th Cir. 1988); *Knaubert v. Goldsmith*, 791 F.2d 722, 728 (9th Cir.), *cert. denied*, 479 U.S. 867 (1986).   This discretion is exercised in favor of an appointment if the circumstances of the case indicate that counsel is necessary to prevent due process violations or if the court determines "'that the interests of justice require.'"   *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986), *cert. denied*, 481 U.S. 1023 (1987) (quoting 18 U.S.C. § 3006A(g)); *Knaubert*, 791 F.2d at 728-29.   Counsel need not be appointed when a petitioner has a "good understanding of the issues and the ability to present forcefully and coherently his contentions." *LaMere v. Risley*, 827 F.2d 622, 626 (9th Cir. 1987).

The interests of justice do not require the appointment of counsel in this case. Petitioner clearly articulated his grounds for relief and demonstrated an understanding of the issues.

2 - FINDINGS AND RECOMMENDATION -

I.    <u>Statutory and Regulatory Framework</u>

In 18 U.S.C. § 4042(a) Congress vested the BOP with broad authority for the "management and regulation of all Federal penal and correctional institutions." In 18 U.S.C. § 3621(b), Congress established a statutory mandate that the BOP "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."[2]  In § 3621(e) Congress specified:

> the [BOP] shall, *subject to the availability of appropriations,* provide residential substance abuse treatment (and make arrangements for appropriate aftercare) for all eligible prisoners ... *with priority for such treatment accorded based on an eligible prisoner's proximity to release date.*

The BOP regulations implementing the RDAP mandate in § 3621(e) are codified at 28 C.F.R. §§ 550.53-550.55 (March 16, 2009). BOP Program Statement P5330.11 details the agency's internal guidelines and implementing instructions for RDAP in Chapter Two (2), Section 2.5. The regulations define RDAP admission and placement criteria, specifying that an inmate must be able to complete all three components of the program. 28 C.F.R. § 550.53(b)(3); § 550.53(e). The accompanying program statement instructions specify inmates ordinarily must have 24 months or more remaining on their sentence for admission and placement;  BOP staff will monitor wait lists;

---

[2]Congress also vested the BOP with the discretion to reduce the term of imprisonment of inmates convicted on non-violent offenses, by not more than one year, upon the successful completion of RDAP. 18 U.S.C. § 3621(e)(2).

and RDAP eligibility interviews will be conducted "ordinarily no less than 24 months from release."[3]    Program Statement P5330.11 §§ 2.5.1; 2.5.5; 2.5.8 and 2.5.9.

The BOP also administers a program called the Inmate Financial Responsibility Program ("IFRP").    28 C.F.R. §§ 545.10 - 545.11; Program Statement P5380.08 (8/15/2005).    It was created to serve both penal and social purposes and it allows inmates to pay a broad range of financial obligations while incarcerated.    Inmate participation is voluntary.    28 C.F.R. § 545.10.

Under the IFRP, BOP staff work with inmates to develop a financial plan, taking into account an inmate's financial obligations and ability to pay.    28 C.F.R. § 545.11.    Non-participation carries consequences, including, for example, being ineligible for program incentives and bonus pay.    28 C.F.R. § 545.11(d).    Inmates who do not meet their IFRP obligations are not eligible for RDAP incentives.    28 C.F.R. § 550.54(b).    Inmates are responsible for reporting payments they make through IFRP to staff.    Program Statement P5380.08, p.8.    "The unit manager is the determining authority when it comes to deciding whether an inmate's

---

[3]2.5.9 The Clinical Interview. § 550.53(e) *Placement in RDAP*. The Drug Abuse Program Coordinator decides whether to place inmates in RDAP based on the criteria set forth in paragraph (b) of this section.

If verifying documentation is found or produced, and only then, inmates who volunteer for the RDAP will be personally interviewed by the DAPC. **Interviews will be conducted based on the inmate's proximity to release, ordinarily no less than 24 months from release.**    * * *

4 - FINDINGS AND RECOMMENDATION -

IFRP payments are commensurate with his/her ability to pay." *Id.*

II.  Statement of the Case

On October 20, 2008, judgement was entered on Petitioner's convictions for: Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1); Assault on Federal Agent in violation of 18 U.S.C. § 111(a)(1) and (b); Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); Armed Robbery of Federal property in violation of 18 U.S.C. § 2114(a); Use of Firearm in Furtherance of A Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A) and 924(c)(1)(A)(ii); Threatening to Assault or Murder a Family Member of Federal law Enforcement Officer in violation of 18 U.S.C. § 115(a)(1)(A) and (b)(1)(4); Threatening to Assault or Murder a Federal law Enforcement Officer in violation of 18 U.S.C. § 115(a)(1)(A) and (b)(1)(4). (#9, Ex. 1 at 1-2.) Petitioner was sentenced to 360 months imprisonment, to be followed by 5 years of supervised release. (*Id.* at 3.) His projected release date is May 27, 2033. (#11, at 2.)

Petitioner's judgment included a Schedule of Payments specifying:

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A. Lump sum payment of $4200.00 due immediately, balance due in accordance "F" below;

* * *

5 - FINDINGS AND RECOMMENDATION -

> F. Special instructions regarding the payment of criminal monetary penalties: Any unpaid amount is to be paid during the period of incarceration at a rate of 50% of wages earned while in the custody of the Bureau of Prisons and during the period of supervision in monthly installments of not less than 10% of the defendant's gross monthly income or $25, whichever amount is greater. Interest on the restitution shall not be waived.

(*Id.* at 7.)    Petitioner also has an additional $350 obligation relating to a civil rights complaint filed pursuant to 42 U.S.C. § 1983. (*Id.* Ex. 2 at 1.)    On March 17, 2009, the United States District Court for the District of Alaska issued an Order allowing installment payments of the $350.00 filing fee, and charging the BOP with collecting the fees.    (*Id.* at 1-3.)

Petitioner was designated to FCI Sheridan in April 2009. (#,9 at 2.)    Once at FCI Sheridan, Petitioner signed several IFRP payment agreements, with the payment amounts based on the standard BOP formula which takes into consideration the money received into his account in the six months prior to the agreement. (#12, at 2-3.) Petitioner made a $40.00 payment in September 2009; and an $80.00 payment in June 2010. A total of $2497.67, seized upon his arrest was also credited against his assessment and restitution obligations. (*Id.*) Petitioner was designated IFRP "participates" until April 14, 2010, despite making only one restitution payment, since he was making payments on the $350 filing fee. From April 14, 2010, until the June 15, 2010, Petitioner was designated IFRP "refuse" due to his lack of participation. (*Id.*) He was re-

6 – FINDINGS AND RECOMMENDATION –

designated "participates" on June 15, 2010 after he made a second IFRP payment. As of June 29, 2010, Petitioner had a remaining IFRP balance of $1582.23 on his restitution obligations, and $16.18 due on the filing fee. (*Id.*) As of June 28, 2010, the BOP had no record of Petitioner requesting to be interviewed for RDAP, in writing or otherwise. (#10, at 4.)

Petitioner brings this habeas action raising two claims. First, he alleges the BOP has wrongfully delayed his interview for RDAP. (#1, Attach. at 3.)    Second, he alleges the BOP has wrongfully set a restitution payment schedule through the IFRP. (*Id.*, at 6.)

Respondent contends Petitioner has failed to exhaust administrative remedies as required under the Prisoner Litigation Reform Act ("PLRA"); Petitioner's RDAP claim is not ripe and Petitioner lacks standing because he had not applied for RDAP at the time he filed this action; Petitioner's IFRP claim is without merit under established Ninth Circuit law; and the Court lacks subject matter jurisdiction. (#9, at 6-22.)

## DISCUSSION

I.   Exhaustion of Administrative Remedies.

Although exhaustion of administrative remedies is not an express jurisdictional requirement under 28 U.S.C. § 2241, federal prisoners must exhaust their administrative remedies "as a prudential matter" prior to seeking habeas relief. *See Laing v.*

*Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004); *Castro-Cortez v.INS*, 239 F.3d 1037, 1047 (9th Cir. 2001); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986); *c.f. Hicks v. Hood*, 203 F.Supp.2d 379, 382 (D.Or.2002) (the exhaustion requirement of the Prison Litigation Reform Act ("PLRA") does not expressly apply to petitions filed under § 2241); *Martin v. Bissonette*, 118 F.3d 871, 874 (1st Cir. 1997)(PLRA provisions do not apply to 2241 actions, citing D.C. Cir., 3rd, 4th, 5th, 9th, 10th, and 11th Cir. cases). A court may waive the exhaustion requirement if pursuing administrative remedies would be futile. *Fraley v. U.S. Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir.1993).

Respondent asserts exhaustion as a grounds for dismissal. A review of the BOP's Administrative Remedy Logs shows Petitioner has filed a single administrative remedy, challenging a disciplinary hearing unrelated to the claims he raises in this action. (#11, at 2.) There is no evidence in the record showing Petitioner made any effort to resolve the issues he raises in his petition through the BOP's administrative remedy process. The Court, therefore, concludes Petitioner has failed to exhaust his administrative remedies. And there is no basis in the record for the Court to find doing so would be futile.

Ordinarily, Petitioner's failure to exhaust administrative remedies would result in the petition being denied without prejudice. However, for the reasons discussed below, the Court

should dismiss the petition with prejudice because the claims presented are without merit.

II.  <u>RDAP Claim</u>

Petitioner contends the BOP is wrongly delaying his interview for RDAP and he asks the Court to order the BOP to interview him immediately for eligibility.  Respondent argues Petitioner's claim is not ripe and that Petitioner lacks standing because there is no record that he applied to be interviewed for RDAP or that he on the waiting list.  Even assuming Petitioner's assertion that he applied for RDAP and was denied an interview is true, this claim is without merit.

The governing statute specifies residential drug treatment is to be prioritized based on inmates' proximity to release date.  18 U.S.C. § 3621(e).  BOP regulations and policies address this requirement by prioritizing eligibility interviews based on an inmate's projected release date, and by specifying that inmates will generally be interviewed no later than 24 months from their projected release date.  Program Statement P5330.11 §§ 2.5.1; 2.5.5; 2.5.8 and 2.5.9.  These policies are a valid exercise of the BOP's broad discretion under the statute to manage drug treatment programs.  *Ruby v. Thomas*, 2011 WL 1549205 (D. Or. Apr. 21, 2011)(24-month rule valid under the Administrative Procedures Act).

Because there is no evidence in the record that Petitioner requested an RDAP interview, and because his projected release date

is more than 120 months away, Petitioner's claim that he has been wrongly denied an RDAP interview is without merit.   Moreover, to the extent Petitioner challenges an individualized determination to postpone the interview until he is within 24 months of his projected release date, "federal courts lack jurisdiction to review the BOP's individualized RDAP determinations made pursuant to 18 U.S.C. § 3621."   *Reeb v. Thomas*, 636 F.3d 1224, 1228 (9th Cir. 2011).

III. IFRP Claim

Petitioner claims the sentencing court did not fix a schedule for payments during incarceration and he, therefore, does not have a current obligation to pay.   (#16, at 5.)   The Court disagrees.

As part of its judgment, the sentencing court included a "Schedule of Payments" which specified Petitioner owed $4,200.00, due immediately, and specified any balance was due as follows:

> Special instructions regarding the payment of criminal monetary penalties:   Any unpaid amount is **to be paid during the period of incarceration at a rate of 50% of wages earned while in the custody of the Bureau of Prisons and during the period of supervision in monthly installments of not less than 10% of the defendant's gross monthly income or $25, whichever amount is greater.** Interest on the restitution shall not be waived.

(#9, Ex. 1 at 7.)   The sentencing court could not have been more clear that Petitioner has an obligation to make payments during his incarceration.   The sentencing court further specified that 50% of the wages Petitioner earns while in the custody of the BOP are to go toward his monetary obligation.

10 - FINDINGS AND RECOMMENDATION -

In *United States v. Gunning*, 339 F.3d 948 (9th Cir. 2003)(*Gunning I*) and *United States v. Gunning*, 401 F.3d 1145, 1150 (9th Cir. 2003)(*Gunning II*) the Ninth Circuit held the district court impermissibly delegated the scheduling of restitution payments in violation of the Mandatory Victims Restitution Act ("MVRA").[4]    In *Gunning I*, the circuit court found:

> the district court ordered that Gunning 'immediately' make restitution in the amount of $3,924,835.37 and, simultaneously, that '[a]ny unpaid amount is to be paid during the period of supervision as directed by a U.S. probation officer.'    **Because we construe this order to assign to the probation office full control of subsequent payment**, we remand for the district court to provide for the terms of restitution.

339 F.3d at 950 (emphasis added).    In *Gunning II*, the circuit court found that on remand the district court set a restitution schedule for the supervised release period, but had not done so for the period of incarceration, because the district court specified only that restitution was to be paid through the IFRP.    401 F.3d at 1150.

Here, the BOP does not have full control over the restitution payments Petitioner makes.    The sentencing court specified restitution is to be paid at a rate of 50% of wages earned during incarceration.    When read with the court's further direction that during the period of supervision payment is "in monthly installments of not less than 10% of the defendant's gross monthly

---

[4] Under the MVRA, the sentencing court must set a restitution payment schedule.    18 U.S.C. §§ 3663A-3664.

income or $25, whichever amount is greater," the "50% of wages earned" constitutes a payment schedule for the period during which payments are inherently unpredictable due to the nature of prison work assignments. The court's schedule is adapted to account for the variability of inmate earnings during incarceration yet gives Petitioner and the BOP direction that restitution payments are to be made at a specified rate.

Because Petitioner presents no evidence that the IFRP plan proposed by the BOP is contrary to the sentencing court's directive, and because the Ninth Circuit has upheld the legality of the IFRP and the BOP's ability to withhold privileges from inmates who choose not to participate in the program, *United States v. Lemoine*, 546 F.3d 1042, 1046-1050 (9th Cir. 2008), Petitioner's IFRP claim cannot stand.

## CONCLUSION

For the reasons stated above, the Petition for Writ of Habeas Corpus (#1) should be denied and this action dismissed with prejudice.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a United States District Judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date.

12 - FINDINGS AND RECOMMENDATION -

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 21st day of June, 2011.

John V. Acosta
United States Magistrate Judge

13 - FINDINGS AND RECOMMENDATION -